SOWELL'S MEATS AND SERVICES, INC., Plaintiff,

v.

Peggy McSWAIN and Vivian Pilant, Defendants.

SOWELL'S MEATS AND SERVICES, INC., Plaintiff,

v.

Kenneth C. BEAM, Frances McAllister, Martha Briggs, Amelia Helms, Joseph Bonds; J. Spratt White, Miller F. Coggins, James B. Cook, W. Waddell Gibson, Trudie B. Heemsoth, Anne S. Suite, and Robert L. Whitley, All Constituting Members of the Board of Trustees, School District No. 4; and Peggy Powers, * Defendants.

No. 0:84–2635–15.

United States District Court, D. South Carolina, Rock Hill Division.

Aug. 8, 1985.

---

* Having been advised that certain parties were improperly identified in the original and subsequent pleadings, the court, *sua sponte*, properly identifies these defendants in this order.

Kenneth E. Sowell, Greenville, S.C., Thomas H. Curlee, Jr., Columbia, S.C., for plaintiff.

Melvin B. McKeown, Jr., Stephen R. McCrae, Jr., York S.C., for defendants.

## ORDER

HAMILTON, District Judge.

The present cases involve the propriety of certain bidding practices utilized in the administration of school lunch programs. Jurisdiction is founded upon 28 U.S.C. § 1343 and 42 U.S.C. § 1983. The matter is before the court upon motions by all defendants for summary judgment. Rule 56, Federal Rules of Civil Procedure.

The plaintiff instituted these two actions, respectively, in the Court of Common Pleas for York County, South Carolina, under 42 U.S.C. §§ 1983 and 1985 against (1) the State Director of Food Services and the York County Food Services Supervisor and (2) the Superintendent, the Assistant Superintendent for Finance, the members of the Board of Trustees, and cafeteria managers of the Fort Mill School District No. 4. The defendants removed the cases to this court under 28 U.S.C. § 1441(a). The plaintiff alleges that the defendants committed acts in the administration and management of school lunch programs of the Fort Mill School District No. 4 which deprived the plaintiff of certain rights, privileges and immunities secured by the Constitution and laws of the United States and the State of South Carolina. Specifically, the amended complaints allege that the plaintiff sells meats and services within the State of South Carolina and that the plaintiff was granted a "state and federally protected right" by guidelines promulgated by the United States Department of Agriculture (hereinafter "U.S.D.A.") and the State of South Carolina for the procurement and purchase of foodstuffs for use in the school lunch programs administered by the defendants. The plaintiff seeks actual and punitive damages as a result of the alleged failure of the defendants to abide by rules and regulations of the U.S.D.A. and the State of South Carolina.

The defendants admit in their answers that certain guidelines have been promulgated by the U.S.D.A. and the State of South Carolina for use in school lunch programs, but they deny that they have engaged in any illegal or improper conduct, or subjected or caused the plaintiff to be deprived of rights, privileges or immunities secured by the Constitution and laws of the United States or the State of South Carolina.

In their present motions for summary judgment, the defendants aver that the present actions may not be maintained because the plaintiff lacks standing to bring these actions, either under 42 U.S.C. § 1983 or under the applicable laws, rules, or regulations of the U.S.D.A. or the State of South Carolina. The plaintiff contends that it has viable claims against defendants of allegedly unlawful deprivations of a property right and maintains these defendants were acting under color of state law in violation of due process and equal protec-

tion guarantees afforded the plaintiff by the Constitution and laws of the United States and of the State of South Carolina.

■ The plaintiff's due process claims depend in the first instance on the existence of an interest within the protection of the Fourteenth Amendment. In order to be accorded protection of the due process clause, the complaining party must have a liberty or property interest within the meaning of the Fourteenth Amendment. *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). To determine whether due process requirements apply to the plaintiff's alleged deprivations, this court "must look not to the 'weight' but to the *nature* of the interest at stake." *Id.* at 571–72, 92 S.Ct. at 2706 (emphasis in original). In the instant cases, the plaintiff makes only general, conclusory allegations concerning the defendants' alleged violations of federal and state law.

In arguing against the defendants' motions for summary judgment, however, the plaintiff acknowledged that the only claims upon which it bases its theory of the existence of an infringed "property right" are that 7 C.F.R. § 210.19a and OMB Circular A–102 have been violated by the defendants in awarding these state contracts to supply foodstuffs to the local school district. The plaintiff has not been able to cite any other state law, including a statute, rule or regulation, or any holding, ruling, or dicta in a South Carolina Supreme Court decision, which the defendants could have possibly violated under the facts alleged in the complaints. Succinctly, the plaintiff remains unable to answer the basic question of what state law defines the nature and extent of its alleged property interest. This court has not been presented any South Carolina law giving property rights to the plaintiff in cases such as these.

■ To the extent that the plaintiff argues that federal law creates its "property right" in the awarding of the contracts to supply foodstuffs to the Fort Mill School District No. 4, this court must disagree. It

is axiomatic that property interests are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and support claims of entitlement to those benefits. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. In fact the *Roth* case maintains:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.

*Id.*

Moreover, to the extent that the plaintiff argues that the bid speculation process defines the nature and extent of the property interest involved, this court disagrees; the plaintiff's principal case, *Three Rivers Cablevision v. City of Pittsburgh*, 502 F.Supp. 1118, 1128 (W.D.Pa.1980), discussed below, disputes that conclusion. In addition, a simple reading of the bid speculations, also, disputes this contention.

■ Thus, the central question this court is faced with is whether the plaintiff has shown that the benefit it seeks to enjoy is one to which it is entitled or merely one it desires to enjoy. Two recent federal decisions, *ARA Services, Inc. v. School District of Philadelphia*, 590 F.Supp. 622 (E.D.Pa.1984), and *Kasom v. City of Sterling Heights*, 600 F.Supp. 1555 (E.D.Mich., S.D.1985), are directly dispositive of the issue now before the court as to whether the plaintiff has legitimate claims of entitlement to the Fort Mill School District No. 4 school lunch program awards. Moreover, since these cases distinguish the three cases upon which the plaintiff so heavily relies in opposition to the defendants' motions for summary judgment,

*Three Rivers, supra, Teleprompter of Erie, Inc. v. City of Erie,* 567 F.Supp. 1277 (W.D.Pa.1983), and *L & H Sanitation, Inc. v. Lake City Sanitation, Inc.,* 585 F.Supp. 120 (E.D.Ark., N.D.1984), the court will undertake a discussion of the pertinent parts of these decisions and their applicability, as well as factual similarity, to the instant cases before the court.

The court in *ARA Services, Inc.* directly addressed the issue of standing of a disappointed low bidder to supply foodstuffs for the use in the school lunch programs of a school district. Similarities between *ARA Services, Inc.* and the instant cases abound. In *ARA Services, Inc.,* the disappointed food supplier brought suit against the school district, the successful bidder, and the individual members of the school board. The plaintiff alleged that it submitted the lowest responsible bid, but that the contract had been awarded to the high bidder, arbitrarily, thereby violating the plaintiff's rights under the due process and equal protection clauses of the Fourteenth Amendment, as well as state law. Jurisdiction of the court was invoked pursuant to both 28 U.S.C. § 1343 and 42 U.S.C. § 1983. As in the instant matter, the plaintiffs, also, alleged that the school district and the members of the school board were required by the contract specifications to award the contract to the lowest responsible bidder meeting the specifications and were, also, required by 7 C.F.R. § 210.19a to adhere to the procurement guidelines set forth in OMB Circular A-102. The court granted the defendants' motion to dismiss the complaint on the ground that it failed to state a claim for the violation of the plaintiff's constitutional rights.

The *ARA Services, Inc.* court did, however, recognize that under Pennsylvania law a taxpayer has standing to challenge the award of a municipal contract to other than the lowest responsible bidder, but, nevertheless, did not recognize any individual entitlement such as is necessary to create a protected property interest. *ARA Services, Inc.,* 590 F.Supp. at 627–29. In pointing out that distinction, the court disposed of the rationale of finding a due process property interest in two decisions relied on by the plaintiff, *Three Rivers* and *Teleprompter of Erie, Inc.*

Specifically, the *ARA Services, Inc.* court states that:

*Three Rivers,* relying in large part on *Winsett v. McGinnes,* 617 F.2d 996 (3d Cir.1980) (en blanc), *cert. denied sub nom. Anderson v. Winsett,* 449 U.S. 1093 [101 S.Ct. 891, 61 L.Ed.2d 822] (1981), held that a bidder for a municipal contract in Pennsylvania who submits a conforming bid pursuant to requirements that the lowest responsible bid be accepted acquires a property interest protected by the Fourteenth Amendment. The process due was defined in *Three Rivers* as "the nonarbitrary exercise by the city of its discretion in making the award." 502 F.Supp. at 1131. Chief Judge Luongo of this District reached a contrary conclusion in *J.P. Mascaro & Sons, Inc. v. Township of Bristol,* 497 F.Supp. 625 ([E.D.Pa.] 1980). *Mascaro* held that a disappointed bidder had "no claim of entitlement to a public contract based on the requirement that the contract be awarded to the lowest responsible bidder, since in Pennsylvania that requirement is solely for the protection of the taxpayers." 497 F.Supp. at 627. This Court believes that Chief Judge Luongo accurately stated Pennsylvania law, and that the *Three Rivers* decision and its progeny gave inadequate consideration to Pennsylvania's long-standing refusal to recognize a property interest, or injury, on the part of a bidder who fails to receive a municipal contract. This Court has concluded the plaintiffs have failed to allege the existence of a property interest which commands due process protection.

*Id.* at 626–27.

Next, the court in *ARA Services, Inc.* addressed the plaintiff's equal protection claim under the Fourteenth Amendment. Citing *Parham v. Hughes,* 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979), the court

pointed out that the function of the equal protection laws is to measure the validity of classifications created by state law. Using the "rational relation test," the court found that the plaintiffs failed to state a claim for violation of the equal protection clause of the Fourteenth Amendment by reasoning:

An equal protection claim fails when it "at most amounts to an allegation that state law was misapplied in [an] individual case." *Short v. Garrison*, 678 F.2d 364, 368 (4th Cir.1982). The Supreme Court has made clear that the misapplication of state law alone does not constitute invidious discrimination in violation of the equal protection clause; "[w]ere it otherwise, every alleged misapplication of state law would constitute a federal constitutional question." *Beck v. Washington*, 369 U.S. 541, 545, 555 [82 S.Ct. 955, 957, 8 L.Ed.2d 98] [*sic*] (1962). Although the plaintiffs have attempted to couch their claim in equal protection language, it is clear that they are, in essence, asserting that state law was misapplied in their case. This Court does not find in the equal protection clause the authority to review for constitutional error a decision of a local or state governmental body merely because the decision is alleged to be arbitrary or unlawful. The contention that the plaintiffs are members of a class of everyone who has had the law misapplied in particular cases, even assuming it were supported by some allegation in the complaint, merely suggests that others may have state law, but not federal constitutional, claims. The plaintiffs have failed to state a claim for violation of the equal protection clause of the Fourteenth Amendment.

*ARA Services, Inc.*, 590 F.Supp. at 629–30.

The similarities between the facts alleged in the *ARA Services, Inc.* case, the truth of which were assumed by the court in granting the defendants' motion for dismissal, and the facts alleged by the plaintiff in the instant cases, the truth of which this court assumes in considering the defendants' motions for summary judgment, are substantial. The plaintiffs in each instance are food suppliers who alleged that they were unsuccessful responsible low bidders to supply foodstuffs in school lunch programs administered by local school districts. Members of the Board of Trustees for the School District of Philadelphia were named as defendants in *ARA Services, Inc.*, whereas in the matter before the court, the defendants are administrators who allegedly "conspired" with other persons, including members of the Board of Trustees of Fort Mill School District No. 4, to deny plaintiff certain asserted constitutional rights and privileges. The plaintiffs in *ARA Services, Inc.* alleged that the defendants violated federal and state law, including certain procurement guidelines, and specifically 7 C.F.R. § 210.19a and OMB Circular A–102. In both this matter before the court and in *ARA Services, Inc.*, the plaintiffs invoked the jurisdiction of the court under 42 U.S.C. § 1983: Also, the defendants in *ARA Services, Inc.* were alleged to have "arbitrarily" awarded the food services contract to a higher bidder, whereas, similarly, the defendants in this matter were alleged not to have followed the established procedures as required in the purchase of foodstuffs and to have conducted an illegal bidding practice.

In the present matter, the court notes with particular emphasis that, as in *ARA Services, Inc.*, there is no South Carolina state law which grants the plaintiff a "protected right" or makes it "an intended beneficiary" of the laws, statutes, ordinances and regulations generally alleged in the complaints. The plaintiff lamely argues in its brief that the "state and federal laws" granting plaintiff its required property interest to assert due process violation claims are the rules and regulations promulgated by the U.S.D.A. and the procurement procedures adopted by the Fort Mill School District No. 4.

The court in *ARA Services, Inc.*, neatly and convincingly disposed of that same rationale used by the plaintiff to assert a

property interest commanding due process protection by maintaining:

> [A] constitutional violation may not be made out merely by showing a breach of the provisions governing the award of the contract. As stated in *Three Rivers:*
>
> Recognition of the fact that the violation of the law is not, ipso facto, a deprivation of due process to all persons affected thereby is fundamental to an understanding of procedural due process. The due process clause is a narrow, personalized guarantee which only protects against the deprivation of one's own *liberty* and *property;* it is not a catchall provision designed to promote the interest of society generally in the obedience of its laws.
>
> 502 F.Supp. at 1128 (emphasis in original). *See Logan v. Zimmerman Brush Co.* [(1982)] 455 U.S. [422] at 430, 102 S.Ct. [1148] at 1155 [71 L.Ed.2d 265]. ("The hallmark of property ... is an *individual* entitlement grounded in state law ...") (emphasis added).

*ARA Services, Inc.,* 590 F.Supp. at 627. Thus, even though the court recognized that Pennsylvania law did confer standing upon taxpayers to challenge government actions which otherwise might be immune from suit, the plaintiffs lacked standing as a disappointed bidder. South Carolina law recognizes neither "taxpayer standing" to challenge awards of state contracts nor the type of standing the plaintiff asserts in the instant cases as a disappointed bidder for the award to supply foodstuffs to a school district. This court is of the opinion that the above rationale and conclusion reached by the *ARA Services, Inc.* court is proper and dispositive in its application to the instant cases.

The second most salient case squarely presenting the major issue presently before the court is the 1985 *Kasom, supra,* decision. In *Kasom,* a landscaping business which was a disappointed bidder on a city contract for noxious weed cutting brought an action against the city under 42 U.S.C. § 1983, claiming that by reason of irregularities in the bidding process, his constitu-

tional rights were violated. The plaintiff raised both equal protection and due process claims in his complaint. The court granted the defendants' motion at trial for an involuntary dismissal pursuant to Federal Rule of Civil Procedure 41(b), holding that no statutory or case law in Michigan vested a property interest in the plaintiff in a case of that type. The court states that it:

> believes that *Three Rivers* and later cases stand for the proposition that where a state statute requires public works contracts to be awarded to the lowest qualified bidder, and where a decision has been made to award such a contract, bidders have a *limited* property interest in not having the procedure, which regulates the enjoyment of benefits sought, applied in an arbitrary or capricious manner.

*Kasom,* 600 F.Supp. at 1559 (emphasis in original) (quoting *L & H Sanitation, Inc.,* 585 F.Supp. 120, 123 (E.D.Ark., N.D.1984)).

As in *ARA Services, Inc.,* the court in *Kasom* found no state law or statute requiring public works contracts to be awarded to the lowest qualified bidder; therefore, even the "limited property interest" in not having the bidding procedure applied in an arbitrary manner was found to be absent. Likewise, this court in the instant cases, where South Carolina law contains no provision defining the nature and extent of the plaintiff's alleged property interest, is of the opinion that the plaintiff falls short of showing the existence of even the "limited property interest" described above in *Kasom.*

This court further acknowledges the importance of the *Kasom* decision in its proper recognition that the *Three Rivers* and *L & H Sanitation, Inc.* decisions, cases upon which the plaintiff relies, represent minority authority for recognition of only a limited property interest in a bidder not having the bidding procedure applied in an arbitrary or capricious manner *only when* state law so provides. Since South Carolina, like Michigan, provides no state law on which the plaintiff can establish his alleged prop-

erty interest, this court is constrained to conclude that this plaintiff lacks standing in the instant cases.

As previously mentioned, the several recent federal district cases which recognize a "limited property interest" in disappointed bidders on state contracts are distinguished by *ARA Services, Inc.* and *Kasom.* Moreover, the *Three Rivers, Teleprompter of Erie, Inc.,* and *L & H Sanitation, Inc.* trilogy of cases depart from the long-standing refusal of the federal courts to recognize a due process property interest of a disappointed bidder on a state contract and represent a minority viewpoint. Not only is *ARA Services, Inc.* contrary to these holdings, but other contemporaneous decisions by other federal district courts also reject this rationale. *See, e.g., Douglas N. Higgins, Inc. v. Florida Keys,* 565 F.Supp. 126 (S.D.Fla.1983); *Kendrick v. City Council of Augusta, Georgia,* 516 F.Supp. 1134 (S.D.Ga.1981). In addition, this court is of the opinion that the decisions representing the minority viewpoint relied upon by the plaintiff and listed chronologically by the plaintiff in its memorandum of law are readily distinguishable from the instant cases.

First, both *Three Rivers* and *Teleprompter of Erie, Inc.* involved claims by unsuccessful bidders for a cable television franchise. As stated by the court in *Teleprompter of Erie, Inc.:*

> In the context of cable franchise awards courts have fashioned a narrow protected interest. It is the right of the most responsible bidder in full compliance with the specifications of state and municipal law to be awarded the cable franchise. ... In the context of an award of a cable franchise, it has been held that the process due the plaintiff was the non-arbitrary exercise by the municipality of its decision in making the award. As in *Three Rivers,* the denial here of the substantive benefit without the process is an actual wrong.

*Teleprompter of Erie, Inc.,* 567 F.Supp. at 1287–88. Therefore, the courts in *Three Rivers* and *Teleprompter of Erie, Inc.* rec-

ognized there was something special about the award of a cable television franchise; the successful bidder was granted an exclusive right or monopoly on a long-term or even indefinite basis. For that reason, the Pennsylvania federal district courts fashioned an exception to the long-standing rule of no standing for disappointed bidders on state contracts.

Likewise, the case of *L & H Sanitation, Inc., supra,* is readily distinguishable from this case. In *L & H Sanitation, Inc.,* the plaintiff was the lowest responsible bidder on a contract for collection, transportation and disposal of solid waste within the city of Lake City, Arkansas. It alleged that the waste collection contract was awarded to a higher bidder arbitrarily and capriciously. Again, the court was presented with a situation of a municipal contract, which really amounted to a franchise or monopoly, to dispose of all of the city's solid waste.

A most important distinguishing feature between the present cases and the *Three Rivers, Teleprompter of Erie, Inc.* and *L & H Sanitation, Inc.* cases is that in each of the three latter cases the courts found some state statutory provision limiting the exercise of discretion by a state official awarding the contract or a state law conferring standing upon a taxpayer to challenge the award of state contracts. There are no similar South Carolina statutory provisions or other state laws which would confer standing upon the plaintiff in the matter before the court.

While the plaintiff properly begins its memorandum on the case development of the law on standing with *Perkins v. Lukens Steel,* 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940), this court remains unpersuaded that the *Three Rivers, Teleprompter of Erie, Inc.,* and *L & H Sanitation, Inc.* line of cases have "overruled" the long-standing holding of *Perkins.* The Court ruled in *Perkins* that, although government contract bidding procedures may benefit the public generally, those procedures do not independently create enforceable property rights in bidders. The *Perkins* ruling remains good law since the

decision has not been overruled, and its basis is reiterated by the decisions of *ARA Services, Inc.*, and *Kasom.*

This court has analyzed the long list of cases cited by the plaintiff in opposition to the motion for summary judgment and concludes that these cases are readily distinguishable on their faces from the instant matter. In fact, no cases are factually as similar to the instant cases as *ARA Services, Inc.* and *Kasom.* Furthermore, a recent Fourth Circuit decision, *Phelps v. Housing Authority of Woodruff,* 742 F.2d 816 (1984), presents a good discussion of what is properly addressable under 42 U.S.C. § 1983. The holding in *Phelps,* wherein the court upheld the lower court's judgment for the defendants after trial, is contrary to what the plaintiff in the instant cases calls a trend in the case development in its favor.

For the foregoing reasons and based on the cited authorities, the court is constrained to conclude that the plaintiff lacks standing to establish any due process property interest or a violation of equal protection rights in the instant cases under 42 U.S.C. § 1983 or under the Constitution and laws of the United States and the State of South Carolina.

IT IS THEREFORE ORDERED that the defendants' motions for summary judgment be, and the same hereby are, granted.[1]

1. As a result of its ruling herein, the court deems it unnecessary to address the concomitant grounds upon which the defendants also couch their present motions; *i.e.,* (1) the "good faith" claims of the respective defendants, (2) the "qualified immunity" from liability for damages under 42 U.S.C. §§ 1983 and 1985 by the respective defendants, (3) the inapplicability of the respondeat superior doctrine to the respective defendants, and (4) the "conspiracy" allegations under 42 U.S.C. § 1985. The court having concluded that the plaintiff lacks standing to pursue these actions, it is not necessary to address these issues on their merits.