NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

COMPASSIONATE CARE DISPENSARY, INC., an Arizona nonprofit corporation,

*Plaintiff/Appellant*,

*v.*

ARIZONA DEPARTMENT OF HEALTH
SERVICES, an agency of the State
of Arizona; CORY NELSON,[1]
Interim Director of the Arizona Department of Health Services,
in his official capacity,
*Defendants/Appellees*

No. 1 CA-CV 13-0133
FILED 3-24-2015

Appeal from the Superior Court in Maricopa County
No. CV2012-057041
The Honorable Michael D. Gordon, Judge

**REVERSED AND REMANDED**

---

[1]     Effective March 4, 2015, Cory Nelson was appointed as Interim Director, replacing Director Will Humble.  Pursuant to Rule 25(e)(1) of the Arizona Rules of Civil Procedure, the case caption is amended to reflect this change.

COUNSEL

K.L. Ward & Associates, PLLC, Chandler
By Kathryne L. Ward
*Counsel for Plaintiff/Appellant*

Sherman & Howard L.L.C., Phoenix
By Gregory W. Falls and Michael W. Wright
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Patricia A. Orozco joined.

---

**B R O W N**, Judge:

**¶1** Compassionate Care Dispensary, Inc., ("CCD") appeals the superior court's dismissal of its complaint against the Arizona Department of Health Services and its director (collectively "the Department") relating to CCD's application to operate a medical marijuana dispensary. Because we conclude that the allegations of the complaint were sufficient to state claims against the Department for a declaratory judgment and writ of mandamus, we reverse and remand for further proceedings in the superior court.

**BACKGROUND**

**¶2** In 2011, the Department began accepting applications from entities seeking certification to operate nonprofit medical marijuana dispensaries. Pursuant to regulations promulgated by the Department, only one dispensary registration certificate was to be awarded for each Arizona Community Healthcare Analysis Area, or "CHAA," of which there are 126. As part of the application, prospective dispensary operators were required to submit documentation from the local jurisdiction indicating that the proposed dispensary location was in compliance with local zoning laws and ordinances.

**¶3** CCD sought a medical marijuana dispensary registration certificate to operate a dispensary in the Winslow CHAA, and started its application process by applying for a Conditional Use Permit ("use

2

permit") from the City of Winslow ("the City") to operate a dispensary at 1600 East Second Street. As part of the application process, CCD principals attended community meetings and public hearings, obtained engineering and environmental impact reports, submitted sworn attestations, and underwent significant criminal background investigations. In May 2011, the City's Office of Planning and Development granted CCD a nontransferable use permit for the Second Street Location.

¶4        As a result of unrelated litigation, dispensary certificate application allocations throughout the state were stayed until May 2012. CCD alleges that, when the stay was lifted, three prospective operators applied for a certificate in the Winslow CHAA: CCD, The Medicine Room, LLC ("TMR"),[2] and Green Cross Medical ("GCM"). Both CCD and GCM applied using the Second Street location. TMR applied using a location at 701 Mike's Pike, for which a different entity, Pursuit for Life ("PFL"), had previously obtained a use permit. The Winslow City Planner ("city planner") signed a "zoning clearance letter" in the form required by the Department on behalf of CCD, TMR, and GCM stating that each entity's proposed dispensary location complied with all City zoning requirements; however, according to CCD, the city planner signed the forms for TMR and GCM under the false premise that the use permits for the two locations were transferable.

¶5        The Department initially determined that all three applicants had satisfied the regulatory requirements and listed three proposed dispensary applicants on its website. Because the Department had determined that three applicants met the requirements of Arizona Administration Code ("A.A.C.") R9-17-302(A), the Department was set to conduct a lottery to randomly allocate a certificate to one of the applicants pursuant to A.A.C. R9-17-302(B)(16) (2011).[3]

¶6        CCD, however, objected to the action taken by the city planner. Counsel for CCD contacted the City and alleged that the use

---

[2]       We are unable to discern from the record before us whether this is the actual legal name of the entity that filed the application. Pursuant to Arizona Revised Statutes ("A.R.S.") section 36-2810, the Department is generally prohibited from disclosing the contents or any supporting information of an application to operate a dispensary.

[3]       The regulations have been amended twice since CCD began the application process for a dispensary registration certificate. Unless otherwise stated, we refer to the 2011 version of the Regulations.

permits previously obtained by CCD and PFL were nontransferable and could not be used by other applicants to satisfy City zoning requirements. The Winslow City Attorney ("city attorney") agreed with CCD's interpretation.

¶7         On May 25, 2012, before any lottery was held, the city attorney contacted GCM, TMR, and the Department to inform them that neither GCM nor TMR was in compliance with the City's zoning restrictions. In the course of litigation between GCM and a former owner of the Second Street location, the city attorney signed an affidavit stating that (1) the City's use permits are nontransferable; (2) neither GCM nor TMR held use permits for their proposed locations; and (3) neither applicant had complied with the City's zoning ordinances, which required each applicant to obtain a use permit before the proposed dispensary location could be deemed properly zoned. In addition, the city attorney clarified that the Department's form "document of compliance" was "confusing" and that the intent of the City's ordinance was always to require potential applicants to individually obtain a use permit before the proposed location could be deemed properly zoned.

¶8         On June 18, 2012, counsel for CCD sent a letter to the Department alleging that neither GCM nor TMR had obtained a use permit for their proposed locations and thus neither was in compliance with the City's zoning ordinance. On or about July 18, 2012, the Arizona Medical Marijuana Program, a division of the Department, sent a letter to GCM, which stated in part as follows:

> The [Department] has received a letter from the Winslow City Attorney dated May 25, 2012, indicating that you have not obtained a Conditional Use Permit as required by the Winslow City Zoning Code. Based on this information from your local zoning jurisdiction, you are not in compliance with Arizona Administrative Code [] R9-17-304(C)(5)-(6).

The letter explained further that GCM's dispensary application was "inadvertently deemed substantively complete," and that GCM could either withdraw its application or it would be denied.

¶9         As the scheduled lottery date approached, counsel for CCD contacted counsel for the Department, demanding that the Department take similar action and notify TMR of its incomplete application. In an email sent the morning of August 8, 2012, the scheduled lottery date, the Department's counsel stated that the Department "did reach out" to the city attorney and, as a result, he reversed his position on TMR's zoning issue.

4

Counsel for CCD immediately contacted the city attorney, who "denied this interpretation of his statements," and reaffirmed the position set forth in his affidavit and his May 25 letter. Counsel for CCD then unsuccessfully attempted to discuss the matter further with representatives from the Department and the Department's counsel. The Department conducted the lottery as scheduled and, as the randomly chosen applicant, TMR was awarded a dispensary certificate for the Winslow CHAA.

¶10 CCD sued the Department, alleging it took inconsistent positions regarding the applicants for the Winslow CHAA and acted to the detriment of CCD by contacting the city attorney to attempt to influence him to change his position and thereby support TMR's application. CCD alleged that the Department acted wrongfully, arbitrarily, and capriciously in failing and refusing to deny TMR's application. CCD thus sought (1) a declaratory judgment ruling that the Department improperly accepted TMR's application, and (2) a writ of mandamus under the Rules of Procedure for Special Actions ordering the Department to void the lottery results and award a dispensary certificate to CCD, plus damages, attorneys' fees, and costs.[4]

¶11 In response, the Department filed a motion to dismiss under Arizona Rule of Civil Procedure ("Rule") 12(b)(6), arguing that CCD's complaint should be dismissed because (1) the award of a dispensary registration certificate is not a "final decision" and therefore not subject to administrative or judicial review; and, (2) even assuming the award was a final decision, CCD did not exhaust its administrative remedies and thus lacked standing to judicially challenge the Department's decision to include TMR in the lottery. Alternatively, the Department asserted it has absolute and qualified immunity, and CCD failed to join the successful applicant (TMR), an indispensable party.

¶12 Following oral argument on the motion, the superior court determined that CCD had standing to assert its claim because, assuming the Department wrongfully accepted TMR's application, "there would have been no lottery at all and [CCD] would have been awarded the Registration Certificate," and thus CCD suffered harm. The court rejected the Department's argument that CCD failed to exhaust its administrative remedies because the court concluded—and the parties agreed—CCD did not have an administrative remedy under the Arizona Medical Marijuana

---

[4] CCD also sought a temporary restraining order and preliminary injunction, which the court later denied without prejudice. CCD does not challenge that ruling in this appeal.

5

Act ("AMMA"), A.R.S. §§ 36-2801 through -2819.  The court then dismissed the complaint with prejudice, finding that CCD did not have a property right in the award of a registration certificate and therefore was owed no due process.  Based on that determination, the court also dismissed CCD's claim for special action mandamus relief, concluding that without a "substantive right grounded in statute," special action relief could not be granted.  CCD's timely appeal followed.

## DISCUSSION

### A.     Statutory Background

¶13         The AMMA provides for, among other things, the registration and certification of nonprofit medical marijuana dispensaries.  A.R.S. § 36-2804.  The Department, as the agency charged with implementing the AMMA, was required to adopt regulations governing "the manner in which the [D]epartment shall consider applications for . . . registration certificates."  A.R.S. § 36-2803(A)(4)(a).  In 2011, the Department adopted A.A.C. R9-17-101 through R9-17-323 (the "Regulations").

¶14         The AMMA restricts the number of registration certificates the Department may issue.  A.R.S. § 36-3804(C).  Pursuant to the Regulations in place at the time CCD applied for a registration certificate, the Department could issue only one registration certificate per CHAA.  A.A.C. R9-17-101(7), -303(B).  The Regulations include step-by-step instructions about the manner in which the Department accepts, reviews, and awards dispensary registration certificates.  *See* A.A.C. R9-17-302 through -304.

¶15         An entity seeking to obtain a dispensary registration certificate must submit to the Department an application form along with substantial documentation regarding the entity's officers or members, proposed location, and business plan, together with a $5,000 application fee.  A.A.C. R9-17-304(D). An applicant must also submit "[d]ocumentation from the local jurisdiction where the dispensary's proposed physical address is located that: (a) [t]here are no local zoning restrictions for the dispensary's location; or (b) [t]he dispensary's location is in compliance with any local zoning restrictions[.]"  A.A.C. R9-17-304(D)(6).  *See also* A.R.S. § 36-2804(B)(1)(d) (prospective nonprofit medical marijuana dispensary must submit "a sworn statement certifying that the registered non-profit medical marijuana dispensary is in compliance with the [zoning] restrictions," if any).

¶16 The Department begins its allocation of one dispensary registration certificate per CHAA by opening the application period and accepting applications.[5] Once the application period has closed, the Department reviews the applications. If the Department determines that only one dispensary registration certificate application for a particular CHAA "is complete and in compliance with" the AMMA and the Regulations, then the Department "shall allocate the dispensary registration certificate for the CHAA to that applicant[.]" A.A.C. R9-17-303(E)(1). If the Department receives more than one application that meets all requirements, the successful applicant is selected by a random drawing, or lottery. A.A.C. R9-17-303(E)(2).

¶17 If the Department determines that an application is complete and compliant with the AMMA and the Regulations, but the applicant is not chosen through the random selection process, the corresponding written notice to the applicant "is not a denial and is not considered a final decision of the Department subject to administrative review[.]" A.A.C. R9-17-107(G)(3). Likewise, the Department's failure to award a certificate is not a "final decision" subject to judicial review by the superior court under the Administrative Remedy Act, A.R.S. §§ 12-901 through -914. A.R.S. § 36-2804.05(G).

### B. Claim For Special Action/Mandamus

¶18 The superior court dismissed CCD's claim for special action mandamus relief because CCD failed to alleged facts sufficient to show that CCD had a substantive right grounded in statute.[6] On appeal, CCD argues

---

[5] Ariz. Admin. Code R9-17-302 was repealed after the Department allocated all initial certificates. *See* A.A.C. R9-17-303(A) (2015) ("Each calendar year beginning in 2013, the Department shall review current valid dispensary registration certificates to determine if the Department may issue additional dispensary registration certificates pursuant to A.R.S. § 36-2804(C)").

[6] As a threshold matter, a party bringing a special action in superior court must have standing to do so. *Sears v. Hull*, 192 Ariz. 65, 68, ¶ 9-11, 961 P.2d 1013, 1016 (1998). Standing requires a plaintiff to allege a "distinct and palpable injury" that is particularized or personal to the plaintiff. *Id.* at 69, ¶ 16, 961 P.2d at 1017. The superior court determined that CCD had standing to bring an action against the Department because, assuming that the Department arbitrarily included TMR in the lottery for the Winslow

that the superior court's reasoning "misconstrue[d] the nature of special actions." CCD also asserts that it properly stated a claim for special action relief because a government agency may not act arbitrarily or capriciously in the exercise of its duties. The Department argues that the superior court's dismissal of CCD's claim for special action relief was appropriate because (1) CCD is not entitled to special action relief because it has no substantive property right in a certificate, and (2) the Department's decision to accept TMR's application is discretionary and not appropriate for special action review.

**¶19** There are two forms of special action relief. *See* Ariz. R.P. Spec. Act. 1; *Circle K Convenience Stores, Inc. v. City of Phoenix*, 178 Ariz. 102, 103, 870 P.2d 1198, 1199 (App. 1993). Statutory special actions provide a legal avenue for mandatory judicial review pursuant to laws that "expressly authorize[] proceedings under certiorari, mandamus, or prohibition[.]" Ariz. R.P. Spec. Act. 1(b). Nonstatutory special actions provide an avenue for discretionary judicial review, encompassing the traditional writs of mandamus, certiorari, and prohibition. *Circle K Convenience Stores,* 178 Ariz. at 103, 870 P.2d at 1199; Ariz. R.P. Spec. Act. 1(a).[7] Nonstatutory special actions constitute a limited form of review in which the only questions that may be raised are:

---

CHAA, CCD "would have been awarded the Registration Certificate" and, thus, suffered harm sufficient to provide standing. The Department does not challenge this determination through cross-appeal or otherwise.

[7]     Rule 1(a) provides in pertinent part as follows:

Relief previously obtained against a body, officer, or person by writs of certiorari, mandamus, or prohibition in the trial or appellate courts shall be obtained in an action under this Rule, and any reference in any statute or rule to any of these writs, unless excepted in the next subsection, shall be deemed to refer to the special action authorized under this Rule. Special forms and proceedings for these writs are replaced by the special action provided by this Rule, and designation of the proceedings as certiorari, mandamus, or prohibition is neither necessary nor proper.

> (a) Whether the defendant has failed to exercise discretion which he has a duty to exercise; or to perform a duty required by law as to which he has no discretion; or
>
> (b) Whether the defendant has proceeded or is threatening to proceed without or in excess of jurisdiction or legal authority; or
>
> (c) Whether a determination was arbitrary and capricious or an abuse of discretion.

Ariz. R.P. Spec. Act. 3. Unlike a statutory special action, for which the right to review is granted by statute, the superior court has the discretion to deny jurisdiction over a nonstatutory special action. *See Bilagody v. Thorneycroft*, 125 Ariz. 88, 92, 607 P.2d 965, 969 (App. 1979) ("As a general rule, an appellate court's decision regarding whether or not it will entertain the merits of a non-statutory special action is a discretionary one."). "[W]hen a special action is initiated by complaint in superior court the judge must first exercise his discretion and decide whether to consider the case on its merits." *Id.* Here, the superior court did not expressly accept jurisdiction over CCD's special action complaint. However, because the court denied CCD's special action for failure to plead a substantive right, we presume that the superior court implicitly exercised its discretion to accept jurisdiction but then denied relief. Because no party claims error in the superior court's exercise of special action jurisdiction, the question is whether the superior court erred in denying relief.

**¶20**     We review de novo the grant of a motion to dismiss a complaint under Rule 12(b)(6). *Sw. Non–Profit Hous. Corp. v. Nowak*, 234 Ariz. 387, 390, ¶ 10, 322 P.3d 204, 207 (App. 2014). In reviewing the dismissal of a complaint for failure to state a claim, we accept as true the facts alleged in the complaint and will affirm the dismissal if the plaintiff would not be entitled to relief under any interpretation of the facts susceptible of proof. *Fidelity Sec. Life Ins. Co. v. State Dep't. of Ins.*, 191 Ariz. 222, 224, ¶ 4, 954 P.2d 580, 582 (1998). "However, we do not accept as true allegations consisting of conclusions of law, inferences or deductions that are not necessarily implied by well-pleaded facts, unreasonable inferences or unsupported conclusions from such facts, or legal conclusions alleged as facts." *Jeter v. Mayo Clinic Arizona*, 211 Ariz. 386, 389, ¶ 4, 121 P.3d 1256, 1259 (App. 2005). We may consider the complaint's exhibits, or public records regarding matters referenced in a complaint, without converting a Rule 12(b)(6) motion into a summary judgment motion. *See Strategic Dev. &*

*Constr., Inc. v. 7th & Roosevelt Partners*, *LLC*, 224 Ariz. 60, 63-64, ¶¶ 10-13, 226 P.3d 1046, 1049–50 (App. 2010).

**¶21** Citing *Book Cellar, Inc. v. City of Phoenix*, 139 Ariz. 332, 678 P.2d 517 (App. 1983), the superior court concluded that "the Rules of Procedure for Special Actions do not create substantive rights" and, because CCD had no property right in the award of a certificate, the court could not grant special action relief. However, neither *Book Cellar* nor any other authority supports the court's conclusion that a claim for *nonstatutory* special action relief cannot be asserted absent a "substantive" statutory right. Indeed, a person may state a claim for nonstatutory special action relief, even without an independent, substantive right. Ariz. R.P. Spec. Act. 2(a) ("Any person who previously could institute an application for a writ of mandamus . . . may institute proceedings for a special action."). A writ of mandamus allows a "party beneficially interested" in an action to compel a public official or board "to perform an act" imposed by law. A.R.S. § 12–2021; *Bd. of Ed. of Scottsdale High Sch. Dist. No. 212 v. Scottsdale Ed. Ass'n*, 109 Ariz. 342, 344, 509 P.2d 612, 614 (1973) ("Mandamus is an extraordinary remedy issued by a court to compel a public officer to perform an act which the law specifically imposes as a duty."). The term "party beneficially interested" is "applied liberally to promote the ends of justice." *Barry v. Phx. Union High Sch.*, 67 Ariz. 384, 387, 197 P.2d 533, 534 (1948).

**¶22** Generally, mandamus does not lie if the public officer "has any discretion as to what shall be done" *Graham v. Moore*, 56 Ariz. 106, 109, 105 P.2d 962, 964 (1940). However, a public officer "has no discretion to proceed arbitrarily." Ariz. R.P. Spec. Act. 3, State Bar Comm. Note; *see also Tobin v. Rea*, 231 Ariz. 189, 194, ¶ 14, 291 P.3d 983, 988 (2013) ("Misapplication of law or legal principles constitutes an abuse of discretion."). Thus, an action for mandamus may still be brought "if it clearly appears that the officer has acted arbitrarily and unjustly and in the abuse of discretion[.]" *Collins v. Krucker*, 56 Ariz. 6, 13, 104 P.2d 176, 179 (1940). Rule 3(c) specifically provides that the question of "whether a determination was arbitrary and capricious or an abuse of discretion" may be raised through special action.[8]

---

[8] We reject the Department's argument, made for the first time on appeal, that the CCD's complaint failed to reference Rule 3. The complaint stated in part that the action was brought "pursuant to the Rules of Procedure for Special Actions, including, but not limited to, Rule 2." That allegation, together with the request for mandamus relief and specific

¶23	CCD alleged in its complaint that the City adopted a zoning ordinance requiring dispensary certificate applicants to obtain a use permit for their proposed dispensary locations before the City would provide the zoning compliance documentation required in R9-17-304(D)(6).[9]   CCD admits that the city planner signed a zoning clearance letter on behalf of all three applicants, but alleges that the city attorney avowed that the approval was made in error and that neither TMR nor GCM obtained a use permit to operate a medical marijuana dispensary prior to submitting their applications.  CCD also alleged that the Department acted arbitrarily when, after receiving written notification from the city attorney and CCD claiming that neither GCM nor TMR had obtained use permits from the City, the Department chose to address only GCM's deficiency, providing notification that GCM's application was inadvertently deemed complete but was in fact incomplete because GCM did not obtain a use permit as required, with specific reliance on the May 25 letter written by the city attorney.  For purposes of this appeal, we accept the validity of these factual allegations.  *See Fidelity Sec. Life Ins. Co.*, 191 Ariz. at 224, ¶ 4, 954 P.2d at 582.

¶24	CCD does not allege that any statute or regulation provides authority for special action relief.  And, the superior court specifically found that CCD has no administrative remedy whatsoever, a finding not challenged here.  As such, CCD necessarily seeks nonstatutory special action relief and must plead facts sufficient to show that the Department's conduct comes within the Rule 3 categories of questions that may be raised in a special action.  Assuming the truth of CCD's well-pleaded factual allegations, as we must, CCD has alleged facts sufficient to state a claim under Rule 3(c) that the Department acted arbitrarily and capriciously or abused its discretion (1) when it failed to reject TMR's application notwithstanding its awareness that the City had determined that TMR did not in comply with local zoning requirements; and (2) when the Department rejected GCM's application for lack of zoning compliance but not TMR's.  *Cf. Senner v. Bank of Douglas*, 88 Ariz. 194, 199, 354 P.2d 48, 52 (1960) (holding that "mandamus is a proper remedy where the Commission has clearly abused its discretion in refusing to accept for filing articles of incorporation, or amendments thereto, on the ground that the proposed

---

assertions that the Department acted arbitrarily, were sufficient to put the Department on notice of the special action relief CCD was seeking.

[9]	Section 36-2806.01 permits cities, towns and counties to "enact reasonable zoning regulations that limit the use of land for registered nonprofit medical marijuana dispensaries to specified areas[.]"

corporate name is deceptively similar to the names of other existing corporations").

### C. Claim for Declaratory Judgment

**¶25** CCD also sought a declaration that TMR's application was submitted without a "bona fide zoning clearance" letter from the City and therefore should not have been included in the lottery for the Winslow CHAA. For reasons similar to those discussed above, we conclude the superior court erred in dismissing CCD's claim for a declaratory judgment.

**¶26** Like the claim for special action relief, CCD alleged that the Department arbitrarily and unreasonably exercised its discretion when it included TMR in the lottery for the Winslow CHAA but excluded GCM. The Department is responsible for reviewing dispensary registration certificate applications and determining whether they are "complete and in compliance with A.R.S. Title 36, Chapter 28.1" and the corresponding regulations. A.A.C. R9-17-302(A), -304(A). Section 36-2804(B)(1)(d) requires a "sworn statement certifying that the registered nonprofit medical marijuana dispensary is in compliance" with local zoning restrictions, if any. In furtherance of this statutory requirement, R9-17-304(D)(6) similarly requires documentation from the local jurisdiction that the "dispensary's location is in compliance with any local zoning restrictions[.]"

**¶27** The superior court concluded that CCD had no state-created property right in obtaining a dispensary registration certificate for the Winslow CHAA and thus dismissed CCD's complaint, finding that without a property right, neither CCD's procedural due process nor its substantive due process arguments presented a claim upon which relief could be granted. In doing so, the superior court relied on *Grand Canyon Pipelines, Inc. v. City of Tempe*, 168 Ariz. 590, 593, 816 P.2d 247, 250 (App. 1991), in which this court upheld the dismissal of an unsuccessful bidder's claim for damages, holding "a bidder has no claim of entitlement to a public works contract, and, therefore, no property interest in the contract" because "Arizona law recognizes a public body's discretion to reject all bids."

**¶28** *Grand Canyon* is distinguishable because the unsuccessful bidder in that case sought only damages; it did not assert a claim for declaratory relief. *See id.* at 591, 816 P.2d at 248 (unsuccessful bidder sought "consequential and compensatory damages" for alleged violation of its constitutional due process rights). While a plaintiff seeking damages for an alleged procedural due process violation must plead facts sufficient to show a liberty or property interest to survive a Rule 12(b)(6) motion to dismiss,

*Board of Regents v. Roth*, 408 U.S. 564, 569–70 (1972), a plaintiff seeking declaratory relief need only plead "sufficient facts to establish that there is a justiciable controversy." *Planned Parenthood Ctr. of Tucson, Inc. v. Marks*, 17 Ariz. App. 308, 310, 497 P.2d 534, 536 (1972). We therefore need not decide whether CCD has a property right in the award of a dispensary registration certificate.[10]

**¶29**      The Declaratory Judgment Act is remedial and should be broadly construed. A.R.S. § 12-1842 ("This article is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered."); A.R.S. § 12-1831 ("Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."); *Yes on Prop 200 v. Napolitano*, 215 Ariz. 458, 468, ¶ 29, 160 P.3d 1216, 1226 (App. 2007). "For a justiciable controversy to exist, a complaint must assert a legal relationship, status or right in which the party has a definite interest and an assertion of the denial of it by the other party." *Land Dep't v. O'Toole*, 154 Ariz. 43, 47, 739 P.2d 1360, 1364 (App. 1987). A controversy is not justiciable when a defendant entity or official has no power to deny the plaintiff's asserted interests, and a well-plead claim for declaratory relief must name an entity or official that has the ability to control implementation of the statute or regulation. *Morris v. Fleming*, 128 Ariz. 271, 273, 625 P.2d 334, 336 (App. 1980); *Riley v. Cochise County*, 10 Ariz. App. 55, 60, 455 P.2d 1005, 1010 (1969). There is no requirement that a party seeking only a declaratory judgment allege facts to support a due process claim.

**¶30**      CCD alleged that the Department acted arbitrarily when it allowed TMR's application to be included in the lottery even though TMR had not obtained a use permit as required by the City. CCD also alleged that the Department acted capriciously when it denied GCM's application for failure to obtain a use permit, but failed to deny TMR's application for the same reason. Because CCD would have been awarded the dispensary certificate for the Winslow CHAA but for the Department's alleged

---

[10]      In its prayer for relief, CCD requested "damages" but alleged no substantive basis for its request. On appeal, neither parties' briefs reference the request for damages nor do they include any authority suggesting that damages may be awarded in connection with claims for declaratory judgment and mandamus. Based on the superior court record, CCD has failed to allege any substantive ground supporting its request for damages. Therefore, at this juncture of the litigation, there is no pending claim for damages.

arbitrary acceptance of TMR's application, CCD has alleged a harm sufficient to establish a justiciable controversy under the Declaratory Judgment Act. Thus, with or without a property right in the award of a certificate, dismissal at this stage of the litigation was unjustified.

### D.     Additional Grounds for Dismissal

¶31         Dismissal of CCD's complaint was not appropriate for any of the additional grounds asserted in the Department's motion to dismiss. *See Sw. Non–Profit Hous. Corp*, 234 Ariz. at 390–91, ¶ 10, 322 P.3d at 207–08 ("Although we 'uphold dismissal only if the plaintiffs would not be entitled to relief under any facts susceptible of proof in the statement of the claim,' . . . we may affirm if the dismissal is correct for any reason[.]") (internal citations omitted).

### 1.     Statutory Immunity

¶32         As alternative grounds for dismissal, the Department argues that A.R.S. §§ 12-820.01 and -820.02 provide the Department with either absolute or qualified statutory immunity from suit. Section 12–820.01(A)(2) absolutely immunizes a public entity from liability for any act or omission of an employee constituting "[t]he exercise of an administrative function involving the determination of fundamental governmental policy." Section 12–820.02(A)(5) provides public entities and public employees with qualified immunity from liability for, among others, "the issuance of . . . any permit, license, certificate, approval, order or similar authorization[,]" unless the public employee in question intended to cause injury or was grossly negligent. Contrary to the Department's assertions, these statutes apply only to suits "against public entities and public employees for money damages." *See Zeigler v. Kirschner*, 162 Ariz. 77, 84, 781 P.2d 54, 61 (App. 1989). As explained above, CCD has not alleged any substantive claim that would entitle it to an award of damages; its claims are based on declaratory and special action relief, neither of which permits recovery of damages. Accordingly, these statutes do not insulate the Department from the claims asserted by CCD.

### 2.     Failure to Join an Indispensable Party

¶33         The Department also argues that dismissal was warranted based on CCD's failure to join the successful applicant (identified by CCD

as TMR)[11] as a party to the litigation. Following a hearing on CCD's unsuccessful application for temporary restraining order and preliminary injunction, the superior court ordered that TMR, pursuant to Rule 19(a) "be advised" by the Department that TMR was "to appear in this Court for a Return Hearing" on CCD's application for order to show cause. The court's order also stated that CCD would be given leave to amend its complaint "after [TMR] appears at the return hearing" and that the Department was to provide copies of the complaint and related documents to TMR. The court noted further that "in the absence of the above orders, [CCD] will be denied the due process that may be required to resolve the issue." The Department then "served" TMR by "email and first class mail." TMR did not appear at the hearing, and the court proceeded to hear arguments on the Department's motion to dismiss. At the end of the hearing, the superior court commented that "the other side needs to be involved," undoubtedly in reference to TMR.

¶34            "The compulsory joinder of parties under [Arizona Rules of Civil Procedure] Rule 19 entails a three-step analysis." *Copper Hills Enterprises, Ltd. v. Arizona Dep't of Revenue*, 214 Ariz. 386, 392, ¶ 22, 153 P.3d 407, 413 (App. 2007). "The court must determine: (1) if complete relief can be accorded in the party's absence; (2) whether there is a substantial risk that the existing parties could be subjected to multiple or inconsistent obligations; and (3) whether the absent party, if joinder is not feasible, is indispensable." *Id*. Stated differently, the test of indispensability "is whether the absent person's interest in the controversy is such that no final judgment or decree could be entered, doing justice between the parties actually before the court and without injuriously affecting the rights of others not brought into the action." *Gila Bend v. Walled Lake Door Co*., 107 Ariz. 545, 549, 490 P.2d 551, 555 (1971). If the court determines that joinder is required, then the court "shall order that the person be made a party." Ariz. R. Civ. P. 19(a). If such person "cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Ariz. R. Civ. P. 19(b).

¶35            On a procedural basis, the record before us does not justify dismissal on the grounds of failure to join an indispensable party. The record clearly indicates that the superior court was concerned about proceeding with the litigation in the absence of TMR, the successful

---

[11]    Citing its statutory obligation to keep the contents of applications confidential, the Department informed the superior court it could not disclose the name of the successful applicant.

applicant. However, the superior court never explicitly ordered that TMR be made a party. Nor does the record indicate whether TMR properly could be made a party. As such, the court did not consider whether the joinder of TMR was indispensable. Because these determinations must be made by the superior court in the first instance, the Department is not entitled to dismissal as a matter of law based on failure to join an indispensable party.

**CONCLUSION**

¶36 Viewing the allegations of the complaint in the light most favorable to CCD, we hold that the superior court erred in dismissing CCD's claims for declaratory relief and mandamus. We therefore reverse the court's order of dismissal and remand for further proceedings. By concluding that CCD has stated claims upon which relief may be granted sufficient to defeat the Department's motion to dismiss, we express no opinion concerning the ultimate merit of such claims, any defenses that may be available, or the remedies CCD seeks.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

16